Jonathan O. Hafen (6096)
Cheylynn Hayman (9793)
Michael A. Stevens (17326)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750
jhafen@parrbrown.com
chayman@parrbrown.com
mstevens@parrbrown.com

David R. Anderson*
**FORD HARRISON LLP**
1601 Elm Street, Suite 4000
Dallas, Texas 75201
Telephone: (214) 256-4700
Facsimile: (214) 256-4701
danderson@fordharrison.com

Andrew D. McClintock*
**FORD HARRISON LLP**
271 17th Street, NW, Suite 1900
Atlanta, Georgia 30363
Telephone: (404) 888-3800
Facsimile: (404) 888-3863
amcclintock@fordharrison.com

Kevin S. Little*
**FORD HARRISON LLP**
1221 McKinney Street, Suite 4100
Houston, Texas 77010
Telephone: (713) 832-2903
Facsimile: (713) 832-2998
klittle@fordharrison.com

* *Admitted Pro Hac Vice*

*Attorneys for Defendant Breeze Aviation Group, Inc.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,<br><br>      Plaintiff,<br><br>vs.<br><br>BREEZE AVIATION GROUP, INC.,<br><br>      Defendant. | **REPLY IN SUPPORT OF MOTION TO DISMISS COUNT I AND COUNT II OF PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**(ORAL ARGUMENT REQUESTED)**<br><br>Civil No. 2:26-cv-0050-TS<br><br>District Judge Ted Stewart<br><br>Magistrate Judge Jared C. Bennett |

Defendant Breeze Aviation Group, Inc. ("Breeze") respectfully files this reply in support of its Motion to Dismiss (the "Motion") [ECF No. 29].

## INTRODUCTION

Plaintiff Air Line Pilots Association, International's ("ALPA") Complaint boils down to the contention that the length of negotiations between the parties must mean "Breeze has done something wrong." That is not the law, and ALPA's Opposition to the Motion (the "Opposition") [ECF. No. 30] does not suggest, much less prove, that this case should proceed into discovery. ALPA has solely identified Breeze's <u>lawful conduct</u> during negotiations as the basis for its claims. Without more, the Complaint must be dismissed *with prejudice*.

### A. Breeze's Purported "Roadblocking" of Negotiations

ALPA claims Breeze has refused to negotiate basic, common, industry standard, and/or "foundational" agreements–*e.g.*, a negotiations protocol, interim flight pay-loss, agency shop, and recognition and job security provisions–thereby establishing a plausible bad faith claim under the RLA. (ECF. No. 15, p. 15). ALPA's argument fails because these allegations are legal conclusions masked as factual assertions which are not to be construed as true at this stage of the proceedings. *See Anderson v. First Sec. Corp.*, 249 F. Supp. 2d 1256, 1270 (D. Utah 2002) ("Plaintiffs cannot meet the pleading requirements by merely stating conclusory allegations such as defendants had actual knowledge or were recklessly indifferent."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Although for the purposes of a motion to dismiss we must take all of the <u>factual</u> allegations in the complaint as true, <u>we are not bound to accept as true a legal conclusion couched as a factual allegation</u>") (internal quotation marks and citation omitted) (underline added).[1]

---

[1] To the extent there is a bargaining obligation over "industry standard" provisions, which there is

Moreover, ALPA cites zero authority supporting its claim that negotiating over and reaching an agreement on any of these matters is a prerequisite for "good faith" bargaining. That is because no such authority exists. After all, bargaining with a desire to reach an agreement (the standard) does not require (1) agreement about how to negotiate (*e.g.*, a negotiations protocol), (2) what must be agreed upon (*e.g.*, flight loss-pay, etc.), or (3) what the terms of the overall agreement might be. It is certainly not, as ALPA suggests, the agreement ALPA demands at the bargaining table.

Importantly, ALPA claims that the absence of a bargaining protocol agreement hindered the parties' ability to reach other agreements. ALPA's allegations about the protocol are, quite simply, untrue. Indeed, ALPA admits the parties have reached numerous tentative agreements throughout the Complaint. Moreover, ALPA knew prior to filing its Opposition that the parties had, in fact, executed a negotiations protocol, despite asserting they had not.[2] And, ALPA's Notice [ECF No. 31] regarding the same moots the argument altogether.

Likewise, ALPA's contention that "Breeze has not made *any* proposals" during negotiations is at the very least deeply misleading. (Opposition, p. 14). The Complaint makes that plain. It is axiomatic that ALPA could not unilaterally reach any tentative agreement without

---

not, what constitutes the "industry standard" will necessarily require expert testimony. ALPA proffers in that respect opinions, not facts. Consequently, while for the purposes of the pending Motion the Court must assume the truth of the facts alleged by ALPA—*i.e.*, Breeze engaged in certain objective actions—that same standard does not apply to opinions or conclusions, including those such as what is alleged to be "industry standard." These conclusions must therefore be ignored.

[2] ALPA announced the negotiations protocol to pilots on April 15, 2026, two days before filing its Opposition. (*See* Exhibit A; ECF No. 30).

Breeze's acquiescence, which necessarily required Breeze to make proposals in response to ALPA's demands. ALPA cannot concede tentative agreements were reached and claim Breeze has not made any proposals whatsoever. Doing so is cognitively dissonant. There are no tentative agreements without proposals from both sides.[3]

**B.  Breeze's Lawful Unilateral Changes Do Not Support a Claim of Bad Faith**

ALPA concedes Breeze may lawfully make unilateral changes to pilots' terms and conditions of employment during bargaining for an initial contract. (Opposition, p. 17, fn. 4). It still takes issue with Breeze's alleged belief or intent that it can unilaterally change terms and conditions of pilot employment during the same, particularly with respect to issues for which a tentative agreement has been reached.  To be sure, Breeze can under the law.

The word tentative in "TA" should make that plainly clear, and RLA case law confirms the same. *See. e.g., Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 402 (1942) (the "institution of negotiations for collective bargaining does not change the authority of the carrier" to alter working conditions); *International Brotherhood of Teamsters v. North American Airlines*, 518 F.3d 1052, 1058 (9th Cir. 2008) ("the RLA does not require the parties to maintain the status quo during the time frame before a collective bargaining agreement has been completed, regardless of whether negotiations have been instituted."); *Aircraft Mechanics Fraternal Ass'n v. Atlantic Coast*

---

[3] If ALPA meant to say, but did not, that Breeze has not made any *initial* proposals, then the Opposition still lacks authority supporting the position that Breeze was obligated to make initial proposals to bargain in good faith. Further, ALPA's premise that an employer's failure to make an opening proposal is reflective of bad faith is illogical. The employer during bargaining for an initial agreement under the RLA presumably is content with the prevailing rates of pay, rules and working conditions because it controls them. Why, rhetorically, would it propose something different? Perhaps more to the point, why would an employer open negotiations on any topic with a proposal less favorable to its interests than the current rules? Put simply, it would not. Accordingly, ALPA's argument fails.

*Airlines, Inc.*, 125 F.3d 41, 44 (2d Cir. 1997) ("Under [Section 2 First], the carrier's affirmative duty to exert every effort to make collective agreements—that is, to bargain in good faith—does not require that it refrain from exercising its authority to arrange its business relations with its employees where no collective bargaining agreement is in effect.") (internal citation omitted); *Aircraft Mechanics Fraternal Ass'n v. Atl. Coast Airlines, Inc.*, 55 F.3d 90, 93 (2d Cir. 1995) (same); *Chicago Local No. 458–3M v. Nat'l Labor Relations Bd.*, 206 F.3d 22 (D.C. Cir. 2000); *Indep. Fed'n of Flight Attendants v. Trans World Airlines*, 682 F. Supp. 1003 (W.D. Mo. 1988).[4]

Moreover, ALPA is <u>not</u> a party to the CBA; it is an agent that represents the pilots. So, even if ALPA reached TAs with Breeze on every issue, the pilots must still ratify the contract. Certainly, ALPA would not claim TAs were nevertheless binding if the pilots failed to ratify the contract, and the circumstances here are no different; the pilots have not ratified a first contract and, consequently, TAs are not binding.

### C. **ALPA's Legal Authority Is Not Dispositive**

In footnote 4 of its Opposition, ALPA points the Court to *Transportes Aeros* and *Wis. Cent. Ltd.*, for the contention that Breeze has engaged in misconduct undermining employee rights in violation of the RLA. (Opposition, p. 17). Both are distinguishable. And ALPA's contention regarding *Atlas Air* therein is misplaced.

First, in *Transportes Aeros*, the Court found a status quo obligation existed during the

---

[4] ALPA's reliance on NLRB cases is not dispositive because, unlike the NLRA, no status quo obligation is owed during the negotiations of a first contract under the RLA. *See NLRB v. Katz*, 369 U.S. 736 (1962); *Int'l Ass'n of Machinists & Aerospace Workers v. Transportes Aereos Mercantiles Pan Americandos, S.A.*, 924 F.2d 1005, 1009 (11th Cir. 1991) (we realize that the NLRA "cannot be imported wholesale into the railway labor arena . . . "[e]ven rough analogies must be drawn circumspectively.") (internal quotation/citation omitted).

negotiations of a first contract because, at the outset of bargaining, the carrier *agreed* certain terms and conditions of the units' employment would be treated as "status quo." *Transportes Aereos*, 924 F.2d at 1006.[5] Of course, no such allegation has been made here.

Second, in *Wis. Cent. Ltd.*, the Court concerned itself with claims under Section 6, Section 2, Seventh and Section 2, First of the RLA. *United Transp. Union v. Wisconsin Cent. Ltd.*, No. 98 C 3936, 1999 WL 261714, at *1 (N.D. Ill. Apr. 15, 1999). Here, ALPA makes no claim under Section 6 or Section 2, Seventh. And the Northern District of Illinois' analysis of the Section 2 First claim relied principally on the 11th Circuit's *Transportes Aereos* case discussed above. Again, no such "status quo" agreement has been alleged herein and, as such, *Wis. Cent. Ltd.* offers little in the way of persuasive, much less binding, legal authority.

Third, ALPA's contention about *Atlas Air* misses the mark. (Opposition, p. 17, fn 4; *Reg'l Airline Pilots Ass'n v. Wings W. Airlines, Inc.*, 915 F.2d 1399 (9th Cir. 1990). *West Wings* clearly contemplates that unilateral changes may be made after a union's certification but before the ratification of a first contract. (*Id.*). That the unilateral change there occurred prior to the commencement of bargaining is of little import as the Supreme Court in *Williams* has made clear that prior to reaching a first contract, a carrier may make unilateral changes without violating Section 2, First of the RLA. *Williams*, 315 U.S. at 402 (the "institution of negotiations for collective bargaining does not change the authority of the carrier" to alter working conditions).

### D. <u>Breeze Possesses a First Amendment Right to Speak Directly to Pilots</u>

ALPA contends Breeze's communications with pilots constitute bad faith because Breeze

---

[5] *See also Atl. Coast Airlines, Inc.*, 55 F.3d at 93 (2d Cir. 1995) (The *Transportes Aereos* Court also concluded that the "tentative agreement" at issue had already been reached through collective bargaining during the previous union's tenure).

is allegedly refusing to "treat with" ALPA for negotiations. Not so.

First, ALPA's contention is wholly undermined by its own admission that Breeze has attended negotiation sessions with it for years and numerous TAs have been executed. Second, ALPA's disdain for the All-Pilot calls and conclusory remarks about them does not support a violation of Section 2, First–particularly as ALPA now admits Breeze is free to speak with its pilot group whenever it chooses. (Opposition, p. 24, fn. 6).

Third, the alleged "survey" sent by Breeze to pilots about the PC-12/LearJet projects does not change the analysis. Neither program involves the kind of passenger flying in which Breeze has historically engaged. And ALPA has not claimed Breeze refused to bargain over either program on terms and conditions of employment which <u>might</u> be covered by the CBA. Put simply, ALPA has no meaningful standing to challenge communications with pilots about a new business venture which does not involve flying covered by historical practice.[6] As such, ALPA's analogy to the survey at issue in *Horizon* is nothing more than a red-herring. (Opposition, p. 24) (carrier solicited direct feedback from bargaining unit about specific and existing terms and conditions of employment).[7]

### E. Length of Negotiations

The United States Supreme Court and numerous other tribunals interpreting the RLA have explained that "the procedures of the Act are purposely long and drawn out, based on the hope that reason and practical considerations will provide in time an agreement that resolves the

---

[6] To be sure, the PC-12/Learjet programs were/are designed as "recovery operations" to transport crew to aircraft for repositioning. These missions involve no passenger involvement.

[7] If Breeze solicited, for example, opinions about the pay rates pilots would accept in an agreement, ALPA might have a legitimate gripe. But that is not what was alleged or happened.

dispute." *Detroit & T. S. L. R. Co. v. United Transp. Union*, 396 U.S. 142, 149 (1969) (internal citation omitted); *Bhd. of Ry. & S. S. Clerks, Freight Handlers, Exp. & Station Emp., AFL-CIO v. Florida E. Coast Ry. Co.*, 384 U.S. 238, 246 (1966). Put differently, that negotiations have been protracted is not a basis upon which ALPA may lawfully claim bad-faith bargaining under the RLA.  It is what the RLA contemplates.

### F.  Totality of the Circumstances

ALPA contends dismissal is inappropriate because a "fully developed factual record" is necessary to determine the "totality of the circumstances." (Opposition, p. 11). This contention is inconsistent with Federal Rule of Civil Procedure 12[8]–and a demand for the same is contrary to the limited scope of review in which the Court should engage. *See Wings W. Airlines, Inc.*, 915 F.2d at 1402 ("It is doubtful that Congress intended the federal courts to operate as the NLRB does under the detailed statutory prescriptions of the NLRA. The language of section 2, First through Fourth, is very general, leaving the impression that the federal courts' obligation is to oversee the broad structure of the process and prevent major deviations, not to be involved in particulars of the bargaining process.").

But even if the Court did so engage, a plain reading of the "totality of the circumstances" alleged in the Complaint shows ALPA, in support of its bad faith claim, relies on Breeze's lawful (1) bargaining conduct, (2) workforce communications, and (3) contemplation of independent business ventures. ALPA's reliance on lawful conduct to claim bad-faith is absurd, and its Section 2, First claim should be dismissed *with prejudice.*

---

[8] To the extent ALPA believes additional facts are necessary to allege purported bad-faith bargaining, it only has itself to blame for failing to plead such facts in the Complaint.

### G. ALPA's Section 2, Second, Third, Fourth, and Ninth Claims

ALPA's Count II claims under Section 2, Second,[9] Third, Fourth, and Ninth also fail to state a claim. ALPA's own caselaw demonstrates the steep burden it faces regarding these claims. Because these subsections apply in exceedingly limited circumstances in the post-certification context, ALPA concedes it must show conduct by Breeze constituting "a fundamental attack on the bargaining process" or "a direct attempt to **_destroy_** a union." (Opposition, p. 26 (citing *Loc. Union No. 2000, IBT v. N.W. Airlines, Inc.*, 21 F. Supp. 2d 751, 755 (E.D. Mich 1998) (internal quotation omitted, emphasis added)). ALPA's allegations fall far short.

ALPA relies heavily on *Brotherhood of Railroad Trainmen v. Central of Georgia Railway* for the proposition that a carrier "is not free to destroy the process of collective bargaining and resolution of industrial grievances by wrongfully destroying the effectiveness of the chosen representative." 305 F. 2nd 605, 608 (5th Cir. 1962); *see* Opposition at 21. The facts of *Central of Georgia* stand in sharp contrast to this case. There, the Fifth Circuit's analysis focused on a very particular circumstance that:

> the railroad was taking action to discharge the Chairman of the Grievance Committee of the Brotherhood and that it was doing this pursuant to a plan and scheme of the railroad and its officials for the purpose of discrediting the Brotherhood and the Chairman in the performance of their duties as craft representative and as General Chairman, respectively, under the Act.

*Int'l Ass'n of Machinists v. Eastern Airlines, Inc.*, 320 F.2d 451, 454 (5th Cir. 1963) (underline supplied). Circuit courts have limited the import of *Central of Georgia*, declining to follow it when "no bargaining representative is sought to be disciplined or fired." *Id.*; *see also Int'l Ass'n of*

---

[9] ALPA's Section 2, Second claim is duplicative of its Section 2, First claim. To the extent ALPA also includes "failure to treat" arguments to support a Section 2, Second claim, such arguments are addressed under Section 2, Third, Fourth, and Ninth herein.

*Machinists & Aerospace Workers, AFL-CIO v. Alaska Airlines, Inc.*, 813 F.2d 1038, 1040 (9th Cir. 1987) ("*Central of Georgia* has been limited to its facts" before concluding "this case does not present the exceptional circumstances requiring judicial intervention").[10]

Here, while ALPA claims Breeze's conduct meets the stringent standards for post-certification judicial intervention, the facts pled do not state a plausible claim that Breeze has engaged in "a fundamental attack on the bargaining process" or "a direct attempt to destroy a union." *See N.W. Airlines, Inc.*, 21 F. Supp. 2d at 755. As explained at length in the Motion, ALPA's contentions that Breeze has made disparaging comments about ALPA, or briefly formed a "Pilot Playbook Committee," do not remotely support a claim that it sought to "destroy" ALPA itself. Nor do ALPA's conclusory allegations that such efforts establish a "company union" pass muster under federal pleading standards as ALPA admits any alleged "company union" has been disbanded for years. (Opposition, p. 21). ALPA's admissions that Breeze has bargained with it, including reaching numerous tentative agreements, mandates the opposite conclusion and demonstrates Breeze's good-faith bargaining and recognition of ALPA.[11]

**CONCLUSION**

The facts alleged in ALPA's Complaint fail to state claims under Section 2, First, Second,

---

[10] Moreover, *Central of Georgia* was decided "on bare bones pleadings" decades before the Supreme Court clarified federal pleading standards in *Twombly* and *Iqbal*. "Bare bones pleadings" are no longer sufficient to state a claim. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[11] ALPA cites two additional cases, neither of which supports its Count II claims. (Opposition, p. 18). *Virginian Railway Co. v. System Federation No. 40* contains no analysis Section 2, Second whatsoever. *See* 300 U.S. 515, 546 (1937). And *Local 553, Transp. Workers Union of Am., AFL-CIO v. E. Air Lines, Inc.*, merely states that "in both 'major' and 'minor' disputes, each party has an obligation to make every reasonable effort to settle the parties' differences in conference. Section 2, First and Second, of the RLA, 45 U.S.C. s 152, First and Second." 544 F. Supp. 1315, 1320 (E.D.N.Y. 1982), *aff'd modified*, 695 F.2d 668 (2d Cir. 1982).

Third, Fourth and Ninth of the Railway Labor Act. That ALPA wishes negotiations were faster or easier is not a basis upon which it can claim Breeze violated the law, nor have the Court put its thumb on the scale of the collective bargaining process. The Court should dismiss ALPA's Complaint *with prejudice* and grant Breeze all other relief to which it has shown itself entitled.

RESPECTFULLY SUBMITTED this 15th day of May, 2026.

FORD HARRISON LLP

By: */s/David R. Anderson*
     David R. Anderson
     Andrew D. McClintock
     Kevin S. Little


PARR BROWN GEE & LOVELESS

By: */s/ Jonathan O. Hafen*
     Jonathan O. Hafen
     Cheylynn Hayman
     Michael A. Stevens


*Attorneys for Defendant Breeze Aviation Group, Inc.*